UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CLIFFORD ULYLISSIS BROWN, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No.: 4:21-cv-04051-TER<br><br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB and SSI on January 22, 2020, alleging inability to work since July 1, 2018. (Tr. 17, 331-42). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in August 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 28, 2021, finding that Plaintiff was not disabled. (Tr. 14-30). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 29, 2021, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3).

Plaintiff filed this action in December 2021. (ECF No. 1).

B.     **Plaintiff's Background and Medical History**

Plaintiff was born on July 26, 1977, and was forty years old on the alleged disability onset date. (Tr. 29, 343). Plaintiff alleges disability originally due to shortness of breath, hernias in stomach, cracked ribs, hernia pushing on diaphragm, pain from back of neck to feet, pain from past shooting, PTSD, nightmares, anger, anxiety, depression, back pain, neck pain, pain from standing for long periods, and knee pain. (Tr. 181-82). Pertinent medical records will be summarized in greater detail below under the relevant issue headings.

C.     **The ALJ's Decision**

In the decision of September 28, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 17-30)(emphasis added):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2. The claimant has not engaged in substantial gainful activity since July 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: gunshot wound with disorder of the muscle, ligament, and fascia of the left arm, dysfunction of major joints, hernia, posttraumatic stress disorder, anxiety, depressive and bipolar and related disorders, (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except stand six of eight hours, walk six of eight hours, sit six of eight hours, frequently push pull with the upper extremity, never climb ropes, ladders, and scaffolds. Occasionally climb

      ramps and stairs and occasionally kneel crouch, and crawl. Can perform <u>frequent</u> balancing, stooping, and <u>reaching</u>. Can perform frequent handling and fingering with the left upper extremity. Occasional exposure to hazards, unprotected heights, and dangerous moving machinery. Can perform simple and detailed work, occasional decision making, frequent judgment required on the job reasoning level up to and including three which can be performed on a sustained basis eight hours a day five days a week in two hour increments with normal breaks for an eight hour day. Occasional contact with the public.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on July 26, 1977 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR404.1563 and 416.963).

8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues that the ALJ erred by failing to: (1) fully develop the record by recontacting a consultative examiner, (2) properly evaluate the medical opinions in formulating Plaintiff's residual functional capacity (RFC), and (3) properly account for Plaintiff's moderate limitations in

concentration, persistence, and pace in the RFC. Defendant argues there was adequate evidence for the ALJ to render a finding as to Plaintiff's RFC, and substantial evidence supports the ALJ's decision.

A.   **LEGAL FRAMEWORK**

    1.   **The Commissioner's Determination-of-Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity (SGA); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the

(PRW);[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform

---

claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to

6

support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**Opinions and RFC**

Plaintiff argues the ALJ failed to properly evaluate the opinions of the consultative examiner and the state agency consultants, which also resulted in an RFC unsupported by substantial evidence.

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c, § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017), § 416.920c.  The ALJ is not required to defer or give any specific weight to medical opinions.[3]  20 C.F.R. § 404.1520c(a), § 416.920c(a).  Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of:   (1) supportability; (2) consistency; (3) relationship with the claimant (length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(b), (c), § 416.920c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ

---

[3] While the ALJ cited erroneously to 20 CFR § 404.1527 and 416.927(eff. for applications prior to March 2017), it is evident the ALJ followed the applicable law here for applications after March 2017 where the ALJ found opinions persuasive or not persuasive and the ALJ stated: "I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (Tr. 26-27).

7

is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2), § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and support explanations presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

### 1.    Record Evidence

The record demonstrates that Plaintiff had two major events that contributed to his various impairments. In 2013, he was shot multiple times in the left chest, arm, and hand. (Tr. 552-53). He filed claims for SSI and DIB in 2014, but was found not disabled.[4] (Tr. 160-72). Then, in June 2018, Plaintiff was in a motor vehicle accident in Miami, and he sustained injuries that required abdominal surgery. (Tr. 457). Thereafter, his wounds became infected and required excisional debridement. (Tr. 457). In March 2019, Plaintiff reported bulges and pain at the site of his abdominal surgeries. (Tr. 451-53). A CT scan showed diastasis recti with a wide aperture ventral hernia measuring 8.7 cm and containing multiple small bowel and colonic loops. (Tr. 444). It was recommended that Plaintiff have ex lap and abdominal wall reconstruction surgery, but Plaintiff did

---

[4] The prior ALJ's RFC was medium work, frequent left overhead reaching, and simple, routine, repetitive tasks with only occasional interaction with the public. (Tr. 165).

not schedule the surgery. (Tr. 447-51). Plaintiff continued to report abdominal pain in 2020 and 2021. (Tr. 572-74, 613-17, 750-67). He was prescribed pain medication, but he declined the recommended surgery because "he has been through enough of surgery." (Tr. 756).

### a.    Dr. Early's Opinion

On July 28, 2020, Dr. Early performed a consultative examination. (Tr. 514-16). As part of the musculoskeletal examination, Dr. Early noted:

> There is a 9x8 cm hernia superior to the umbilicus. There is also a less elevated/protuberent hernia beneath this one, that is probably another 8x6 cm. It is the superior umbilical hernia that hurts him. He does not like me to touch any part of his abdomen as he indicates that with the pressure change, his abdomen hurts at the umbilical hernia.
>
> Upper extremity shows full range of motion except at the left elbow and both shoulders. He can only flex left elbow 135 degrees. Fine motor movement intact. He has weak left biceps and triceps at 4+. There is an element of give-away, but it is not entirely give-away weakness.
>
> Shoulders: both have 135 degrees abduction and 20 degrees adduction, 90 degrees external. Right has 80 degrees internal and left has 70 degrees internal rotation. They both flex 90 degrees. He indicates the right shoulder range of motion is impeded by the impaled bullet in his right pectoral muscle. Left has been impeded since the 2013 gunshot wound in the left arm. Neck, full range of motion.
>
> Back: flexes 50 degrees, extends 10 degrees. He states he cannot go further than this due to belly pain. Waddell's negative.
>
> Lower extremity shows full range of motion. Full strength. The left and right hip both have full range of motion, but they induced pain in his hernia area. Full strength in legs. Gait shows he can do tip toe, heel, and tandem gait.

(Tr. 515). Based on his evaluation, Dr. Early offered the following assessment:

> 1. Abdominal pain after delayed healing of abdominal wound—large hernia present. He would be a good candidate for surgical treatment for this. I talked with him about how to access free medical care. He probably has adhesions contributing to his belly pain. It is the belly pain that limits his musculoskeletal system mobility. He was able to work for a month as a

>        courier for a lab company last year. He was not doing more than 10 pounds of lifting.
>
>    2.   Posttraumatic headaches, probably brought on by accident.
>
>    3.   Gunshot wound in 2013 with weakness in the left triceps and biceps, but no clear atrophy. He has decreased range of motion in both shoulders. Poor candidate for forceful gripping in left hand on a recurrent basis. Poor candidate for work with either hand above waist level on occasional basis.

(Tr. 515-16).

### b.   Non-examining Consultant Opinions

Dr. Gates, a non-examining state agency consultant, had Dr. Early's report when he opined Plaintiff's limitations in August 2020, as did Dr. Patton, a non-examining state agency consultant, when she opined Plaintiff's limitations in October 2020. (Tr. 182-91, 216-28). The opinions of Dr. Gates and Dr. Patton are the same. They found Plaintiff could occasionally lift 10 pounds and could frequently lift less than 10 pounds. (Tr. 188, 224-25). The state agency consultants opined Plaintiff could stand/walk for about six hours in an eight-hour workday and could sit for about six hours in an eight-hour workday. (Tr. 188-87, 225). Plaintiff had unlimited push and pull abilities. (Tr. 189, 225). Plaintiff could never climb ladders, ropes, or scaffolds, and he could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. (Tr. 189, 225). <u>The state agency consultants limited Plaintiff to occasional overhead reaching bilaterally due to decreased range of motion in bilateral shoulders and his abdominal wall hernia.</u> (Tr. 189-90, 225-26). They further limited Plaintiff to frequent left hand fingering due to his gunshot wound. (Tr. 189-90, 225-26). The state agency consultants opined that Plaintiff should avoid even moderate exposure to hazards such as machinery and heights. (Tr. 190, 226). In their explanation, the state agency consultants noted that Plaintiff had a partial sedentary rating and his abdominal wall hernias made "lifting both unwise and limited."

(Tr. 191, 227).

### 2. ALJ's RFC Analysis and Assessment of Opinions

The ALJ first summarized Plaintiff's allegations. (Tr. 23). The ALJ noted that Plaintiff had complained of pain in his shoulder when reaching and had testified that he could not reach overhead due to his gunshot wound. (Tr. 23). The ALJ also recognized Plaintiff's testimony that he could only raise his arms chest high. (Tr. 23). The ALJ then summarized Plaintiff's medical records, starting with the motor vehicle accident on June 3, 2018. (Tr. 23-25).

The ALJ then stated:

> Pursuant to 404.1527(c) and SSR 96-8p, I find that the claimant is capable of a range of sedentary exertional work that is unskilled. . . .   His condition is essentially unchanged from his prior decision. However, he did suffer a rather traumatic MVA in which he suffered multiple injuries, including multiple bowel injuries that required surgical repair. He had some complications following surgery and required wound debridement. The record shows continued complaints of abdominal pain. Surgery was recommended at one point, but the claimant decline[d] to have surgery, noting he had enough of surgery. . . .   In establishing the residual functional capacity, I considered the claimant's impairments individually and in combination. I find that the combined effects of all of the claimant's impairments, severe and nonsevere, set forth in section 3 above create synergies necessitating a more restrictive residual functional capacity than if considering the impairments individually. Accordingly, based on the combined effects of all of the claimant's impairment[s], I restricted the claimant to lifting 10 pounds occasionally, 10 pounds frequently, standing six of eight hours, walking six of eight hours, sitting six of eight hours, pushing and pulling in the upper extremities frequently, never being exposed to ropes ladders and scaffolds and occasional exposure to hazards, dangerous moving machinery and unprotected heights. <u>Restrictions with respect to bilateral reaching and handling and fingering with the left upper extremity were imposed based on the claimant's left hand impairment gunshot wound.</u> Postural restrictions were imposed based on the combined effects of the claimant's lumbar spine, abdominal injury, hernia and gunshot wound. . . . The claimant's significant impairments, hernias, and abdominal, reconstructive surgery are the most compelling findings to reduce the exertional level from the prior hearing to sedentary (Exhibit B9F). Treatment records note multiple surgeries due to the abdominal trauma, [sic] gunshot wound and accompanying pain (Exhibit B10F). Despite these significant impairments examination revealed normal range of motion of the musculoskeletal system (Exhibits B15F, B9F, B6F and B2F).

11

> Other findings on examination that was significant in concluding the claimant could do a restricted range of sedentary work were findings of normal strength and sensation (Exhibits B15F, B10F, B8F, B7F, B5F, B2F). Finally, in reaching my conclusions I noted the record repeatedly notes the claimant had normal gait and was ambulatory (Exhibits B10F, B8F, B7F, B6F and B2F).

(Tr. 25-26)(emphasis added).

The ALJ then analyzed the persuasiveness of each of the opinions. The ALJ found Dr. Early's opinion to be "somewhat persuasive." (Tr. 27). The ALJ further explained:

> Dr. Early did not do any examination of the hands, did not mention grip strength warmth swelling nodules synovitis, nothing mentioned regarding the hands therefore there is no basis to impose any limitations on this one-time examination with respect to handling, fingering, and gripping. Treatment records indicate good coordination, normal gait, no loss of strength or balance, no joint stiffness, no muscle aches, and claimant denies headaches. Dr. Early uses terms like "poor candidate" and "forceful gripping." These terms are not defined and do little to clarify the extent of the claimant's limitations. The frequency with which the claimant would experience deficiencies is unclear and there is an absence of clear function by function assessment of the claimant's work-related limitations. <u>The suggested limitations with reaching is inconsistent with treating records indicating normal exams of the extremities</u>. Treatment records prior to the examination with Dr. Early failed to reveal any complaints or examinations because of shoulder problems. (Ex. B2F, p. 18; B5F; B6F; B7F; B9F, p33; B10F)

(Tr. 27)(emphasis added).

As to the opinions of the non-examining state agency consultants, the ALJ found their "assessments <u>unpersuasive with respect to the exertional limitations, but otherwise persuasive</u>." (Tr. 28)(emphasis added). The ALJ discussed the following records:

> I note Exhibit B9F showed full range of motion and no edema in the extremities with lumbar tenderness. In B10F, the claimant denied diarrhea, nausea, vomiting, and joint stiffness. He had normal strength. He had a normal gait with no balance difficulties and good coordination. His abdomen was nontender, nondistended. His right knee had normal range of motion with no edema. A Lachman's test was normal and he had normal gait and strength. In B8F, a musculoskeletal exam showed normal range of motion. There was no distention in the abdomen. A cervical spine exam was normal. No weakness, dizziness, or syncope was noted. There was no

>lightheadedness, numbness, or back pain. Full range of motion in the cervical spine with no abdominal tenderness, distention, or sensory deficits, and normal strength. In B7F, the claimant's neck was supple, lungs clear, abdomen tender, but nondistended. There was no edema, he had normal strength and gait. He denied any joint stiffness or muscle aches. In B6F, notes show he was in no acute distress, had full range of motion of the cervical spine, and the abdomen had diffuse tenderness, but was nondistended. There was no edema in the extremities with full range of motion and normal range of motion in a musculoskeletal exam. (Ex. B5A, B6A, B11A, B12A)

(Tr. 28).

### 3. Discussion

Plaintiff argues that the ALJ's analysis of the opinions was flawed in multiple respects. In particular, Plaintiff asserts that the ALJ failed to explain the lack of a restriction of occasional overhead reaching despite the ALJ finding that the state agency consultants' opinions that Plaintiff was limited to occasional bilateral reaching was persuasive. (ECF No. 11 at 19-20). Likewise, Plaintiff notes Dr. Early's opinion that Plaintiff was limited to occasional reaching in all planes. "Thus, all clinicians of record who offered medical opinions in this case felt that additional manipulative restrictions in reaching were warranted, yet the ALJ failed to address this in the maximum RFC and the accompanying function-by-function analysis." (ECF No. 11 at 20). Plaintiff argues the ALJ failed to build an accurate and logical bridge to explain why the RFC allowed for frequent reaching. According to Plaintiff, "[s]uch errors are not harmless, as the VE testimony establishes that the jobs espoused at Step Five each require reaching on a frequent basis, and a limitation to occasional reaching in any fashion would have eliminated those jobs." (ECF No. 11 at 20 (citing Tr. 62)).

The Commissioner argues the ALJ properly considered the persuasiveness of the medical opinions under the applicable regulatory framework. (ECF No. 12 at 13-15). The Commissioner

further argues that the records support the ALJ's discounting of Dr. Early's opinion, and "[s]imilarly, identifying Plaintiff's negative examination findings throughout the course of the relevant period of review, the ALJ found the state agency medical statements persuasive only to the extent that Plaintiff could perform frequent balancing, stooping, and reaching; and frequent handling and fingering with the left upper extremity." (ECF No. 12 at 14). Thus, the Commissioner submits the ALJ's analysis comports with the regulations and was supported by substantial evidence.

The ALJ's assessment of the non-examining state agency consultants' opinions is confusing. The ALJ states that those opinions are "unpersuasive with respect to the exertional limitations, but otherwise persuasive." (Tr. 28). But, without explanation, the ALJ's RFC did not include a non-exertional reaching limitation opined by the state agency consultants that the ALJ had found persuasive.[5] The consultants opined that Plaintiff could only occasionally reach overhead bilaterally, and the ALJ found that opinion persuasive, but the RFC was for frequent reaching.

The Commissioner argues "the ALJ found the state agency medical statements persuasive only to the extent that Plaintiff could perform frequent balancing, stooping, and reaching; and frequent handling and fingering with the left upper extremity." (ECF No. 12 at 14). This is post hoc

---

[5] There is no requirement that an ALJ translate opinion language into the RFC determination, as the RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). An RFC is an administrative finding of fact. SSR 96-8P, 1996 WL 374184, *2. But, an ALJ should explain the resolution of conflicts regarding opinions in formulating the RFC determination. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p at *7. Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

reasoning.[6] Moreover, the Commissioner's explanation is contradictory to the decision itself, which states that the state agency consultants' exertional limitations—*i.e.*, strength, standing, walking, sitting, lifting, carrying, pushing, and pulling—were unpersuasive, but the opinions were "otherwise persuasive[,]" which indicates the opined nonexertional limitations—*i.e.*, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, talking, seeing, hearing, and environmental limitations—were persuasive. *See* SSR 83-14, 1983 WL 31254, at *1 (defining what functions are exertional and which are nonexertional).

The court cannot speculate that the ALJ mistakenly typed "exertional" instead of "nonexertional" as though he meant to find the nonexertional components of the opinions unpersuasive. Further, such speculation does not naturally arise because the RFC differs from the state agency consultants' opinions in both exertional and nonexertional functional limitations. The RFC includes greater push/pull restrictions (exertional) than those opined by the state agency consultants and lesser reaching and stooping restrictions (nonexertional) than those opined by the state agency consultants. These errors may be outcome determinative: the VE testified that if reaching was limited to occasional, all work would be impossible. (Tr. 62).

The remainder of the ALJ's decision does not further clarify whether the ALJ supported the RFC with citation to substantial evidence and resolution of conflicting evidence. For instance, as quoted above, the ALJ both stated that Plaintiff's "condition is essentially unchanged from his prior

---

[6] Defendant's post-hoc rationalization with respect to this issue cannot be considered by the Court. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

decision" and Plaintiff's "significant impairments hernias, and abdominal, reconstructive surgery are the most compelling findings to reduce the exertional level from [medium at] the prior hearing to sedentary." (Tr. 25-26). Also, in the RFC narrative, the ALJ indicated that postural restrictions were imposed based on the combined effects of the claimant's lumbar spine, abdominal injury, hernia and gunshot wound[,]" but "[r]estrictions with respect to bilateral reaching and handling and fingering with the left upper extremity were imposed based on the claimant's left hand impairment and gunshot wound." (Tr. 25). It is unclear from the ALJ's discussion why bilateral reaching restrictions were included in the RFC if only the left-side gunshot wounds and impairments were the basis for such restrictions. The court cannot ascertain from the ALJ's opinion whether there is substantial evidence to support the ALJ's findings regarding the RFC and the opinions.

Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015). The ALJ's opinion contains internal unresolved conflicts and creates confusion over whether substantial evidence supports the RFC determination. *See Elkins v. Saul*, No. 4:20-cv-01369-TER, 2021 WL 1884747, at *12 (remanding where the court was "left to guess" about how the ALJ assigned weight to a medical opinion where there was an internal inconsistency between the ALJ's discussion of the medical opinion and the RFC). It is not the court's "role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 Fed. Appx. 750, 755 (4th Cir. Dec. 17, 2015). "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) (internal citations omitted).

As outlined above, the court cannot find that the ALJ's decision regarding the evaluation of the state agency consultants' opinions is supported by substantial evidence, and remand is appropriate. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015) ("[W]e agree with the Second Circuit that '[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam))). Upon remand, the Commissioner should address all of the issues briefed by Plaintiff. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

### III. CONCLUSION

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

October 21, 2022  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge